**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

*In the*

# United States Court of Appeals

*for the*

# District of Columbia Circuit

11-7103(L); 13-7068; and 13-7074 XAP

CONTINENTAL TRANSFERT TECHNIQUE LIMITED,

*Plaintiff-Appellee/Cross-Appellant,*

v.

FEDERAL GOVERNMENT OF NIGERIA; ATTORNEY GENERAL
OF THE FEDERATION; MINISTER OF THE INTERIOR,

*Defendants-Appellants/Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

## BRIEF OF APPELLEE/CROSS-APPELLANT

PAUL F. DOYLE
JOEL A. HANKIN
MELISSA E. BYROADE
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

SHAUN M. GEHAN
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400

*Counsel for Appellee/Cross-Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Plaintiff-Appellee and Cross-Appellant Continental Transfert Technique Limited ("Continental") certifies, by and through its undersigned counsel, that Continental has no parent corporation and no publicly held company has a 10% or greater ownership interest in Continental.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Plaintiff-Appellee and Cross-Appellant Continental Transfer Technique Limited certifies as follows:

### A.     Parties and Amici

The Federal Government of Nigeria, Attorney General of the Federation, and Minister of the Interior (collectively, "Nigeria"), Defendants in the District Court, are Appellants in Case Nos. 11-7103 and 13-7068, and Cross-Appellees in Case No. 13-7074.  Continental Transfer Technique Limited ("Continental"), Plaintiff in the District Court, is Appellee in Case Nos. 11-7103 and 13-7068, and Appellant in Case No. 13-7074.

Pursuant to Circuit Rule 26.1, Continental states that no publicly held company has a 10% or greater ownership interest in Continental.

### B.     Rulings Under Review

In Case No. 11-7103, Nigeria appeals an order by Judge Paul L. Friedman dated August 3, 2011 that granted Continental's motion for summary judgment.  *Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,* 800 F.Supp.2d 161 (D.D.C. 2011).  In Case No. 13-7068, Nigeria appeals an amended order and judgment by Judge Paul L. Friedman dated March 26, 2013 (the "Amended Judgment").  *Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,* 932 F. Supp. 2d 153 (D.D.C. 2013).  In Case No. 13-7074, Continental

cross-appeals from the Amended Judgment.

### C.    <u>Related Cases</u>

Case Nos. 11-7103, 13-7068, and 13-7074 are related cases.  There are no other related cases.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF JURISDICTION...........................................................5

STATEMENT OF ISSUES PRESENTED....................................................6

I.     ISSUES PRESENTED BY NIGERIA'S APPEALS ...................................6

II.    ISSUES PRESENTED BY CONTINENTAL'S APPEAL...........................7

STATEMENT OF THE CASE..................................................................7

STATEMENT OF RELEVANT FACTS .....................................................12

I.     NIGERIA BREACHES ITS CONTRACT WITH CONTINENTAL
       AND IS ORDERED TO PAY DAMAGES AFTER TWO-WEEK
       CONTESTED ARBITRATION................................................................12

II.    CONTINENTAL SEEKS CONFIRMATION OF THE AWARD IN
       THE UNITED STATES AND UNITED KINGDOM, NIGERIA
       DEFAULTS AND THEN MANUFACTURES A DEFENSE ....................13

III.   COURTS IN THE UNITED STATES, THE UNITED KINGDOM,
       AND NIGERIA ISSUE ORDERS IN FAVOR OF CONTINENTAL........16

       A.    The District Court Denies Continental's Motion to Dismiss.............16

       B.    The UK Court Denies Nigeria's Motion to Set Aside the
             Judgment ...........................................................................18

       C.    The Nigerian Court Denies Nigeria's Motion to Set Aside the
             Award ................................................................................19

       D.    The District Court Grants Continental's Motion for Summary
             Judgment ...........................................................................19

IV.    CONTINENTAL SEEKS TO MODIFY THE JUDGMENT TO
       CONVERT FOREIGN CURRENCY AMOUNTS AND INCLUDE
       INTEREST ...............................................................................20

SUMMARY OF ARGUMENT................................................................23

STANDARD OF REVIEW ...................................................................25

ARGUMENT ...................................................................................25

I.     NIGERIA'S UFMJRA ARGUMENTS ARE MOOT, NOT
       PROPERLY BEFORE THIS COURT BECAUSE NIGERIA DID
       NOT APPEAL THE 2010 DECISION, AND WAIVED ..........................25

i

**TABLE OF CONTENTS**

**Page**

II.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY
      JUDGMENT ON CONTINENTAL'S UFMJRA CLAIM .........................29

      A.   The UK Judgment Plainly Falls Within The Scope Of The
           UFMJRA ...............................................................................29

      B.   Continental Properly Obtained The UK Judgment ...........................31

III.  CONTINENTAL PROPERLY SOUGHT CURRENCY
      CONVERSION.......................................................................................34

IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY
      TREATING CONTINENTAL'S RULE 60(A) MOTION AS A
      RULE 59(E) MOTION..........................................................................37

V.    CONTINENTAL IS ENTITLED TO PREJUDGMENT INTEREST
      AT AN INTEREST RATE OF 18% AT THE TIME OF JUDGMENT .....39

CONCLUSION ..................................................................................................43

# TABLE OF AUTHORITIES[*]

**Page(s)**

CASES

*American Tel. & Tel. Co. v. F.C.C.*,
602 F.2d 401 (D.C. Cir. 1979).............................................................26

*In re Atighi*,
243 Fed.Appx. 283 (9th Cir. 2007)....................................................26

*Bank of Nova Scotia v. Tschabold Equipment Ltd.*,
754 P.2d 1290 (Wash. Ct. App. 1988).............................................31

*Banque Libanaise Pour Le Commerce v. Khreich*,
915 F.2d 1000 (5th Cir. 1990) ...........................................................25

*Brookens v. White*,
795 F.2d 178 (D.C. Cir. 1986)......................................................27, 28

*Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.*,
899 F. Supp. 1248 (S.D.N.Y. 1995) ..................................................33

*CHEM, Inc. v. C.I.R.*,
66 T.C.M. (CCH) 1241, n. 6 (T.C. 1993) .........................................41

*Ciralsky v. Central Intelligence Agency*,
355 F.3d 661 (D.C. Cir. 2004).........................................7, 24, 25, 38

*Companion Health Svcs., Inc. v. Kurtz*,
675 F.3d 75 (1st Cir. 2012)..................................................................38

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
697 F. Supp. 2d 46 (D.D.C. 2010)............................ 8, 13, 16, 17, 18, 27, 30, 33

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
800 F. Supp. 2d 161 (D.D.C. 2011)........................................9, 20, 28

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
850 F. Supp. 2d 277 (D.D.C. 2012).............................................9, 22

_____

[*]Authorities upon which we chiefly rely are marked by asterisks

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  932 F. Supp. 2d 153 (D.D.C. 2013)....................................... 2, 10, 23, 39, 40, 42

*Cosmos Trading Corp. of Panama v. Banco Nacional de Cuba*,
  No. 06-2935, 2006 WL 4515304 (E.D. La. Nov. 2, 2006)................................33

*\*D.C. v. Air Florida, Inc.*,
  750 F.2d 1077 (D.C. Cir. 1984).........................................................................28

*District of Columbia v. Barry*,
  387 F.2d 860, 861 (D.C. Cir. 1967)..................................................................26

*Doe v. U.S. Dept. of Justice*,
  753 F.2d 1092 (D.C. Cir. 1985).........................................................................35

*In re Doerner, Saunders, Daniel & Anderson, L.L.P.*,
  99 Fed.Appx. 179(10th Cir. 2004).....................................................................26

*Eley v. District of Columbia*,
  Civil Action No. 11-309, 2013 WL 6092502 (D.D.C. Nov. 20, 2013).............41

*Erbe Elektromedizin GMBH v. Canady*,
  545 F. Supp. 2d 491 (W.D.Pa. 2008).................................................................33

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996)....................................................................38, 39

*\*First Am. Corp. v. Al-Nahyan*,
  17 F. Supp. 2d 10 (D.D.C. 1998).......................................................................35

*Fox v. Am. Airlines Inc.*,
  389 F.3d 1291 (D.C. Cir. 2004).........................................................................39

*\*G.E. Transport S.P.A. v. Republic of Albania*,
  693 F. Supp. 2d 132 (D.D.C. 2010)................................................................3,35

*Grenier v. Cyanamid Plastics, Inc.*,
  70 F.3d 667 (1st Cir. 1995)................................................................................28

*Gulf Power Co. v. Coalsales II, LLC*,
  522 Fed. Appx. 699 (11th Cir. 2013).................................................................37

*Lucent Tech., Inc. v. Tatung Co.*,
    269 F. Supp. 2d 402 (S.D.N.Y. 2003) ...............................................................39

*Matthew v. UNUM Life Insur. Co. of America*,
    639 F.3d 857 (8th Cir. 2011) ...............................................................38

*McKesson Corp. v. Islamic Republic of Iran*,
    116 F. Supp. 2d 13 (D.D.C. 2000)...............................................................37

*Mendez v. Teachers Ins. & Annuity Ass'n and College Retirement Equities Fund*, 982 F.2d 783 (2d Cir. 1992) ...............................................................40

*\*Moy v. Howard University*,
    843 F.2d 1504 (D.C. Cir. 1988) ...............................................................37

*Nagi v. C.E. Fleming Corp.*,
    No. 95-7259, 1996 WL 680214 (D.C. Cir. Oct. 21, 1996)...............................27

*\*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. People's Republic of the Congo*, 729 F. Supp. 936 (S.D.N.Y. 1989)........................................... 31, 32, 33

*Osterneck v. E.T. Barwick Indus., Inc.*,
    825 F.2d 1521 (11th Cir. 1987) ...............................................................27

*Osterneck v. Ernst & Whinney*,
    489 U.S. 169 (1989)...............................................................40

*People for Ethical Treatment of Animals, Inc. v. Gittens*,
    396 F.3d 416. (D.C. Cir. 2005)...............................................................40

*SEC v. First Jersey Securities, Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ...............................................................40

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ...............................................................27

*Thomas v. D.C. Gov't*,
    No. 08-5464, 2009 WL 2414418 (D.C. Cir. May 7, 2009) ..............................27

*\*Williams v. Johnson*,
    747 F. Supp. 2d 10 (D.C. Cir. 2010)...............................................................35

*Zajanckauskas v. Holder*,
   611 F.3d 87, 90 (1st Cir. 2010) ..........................................................26

**STATUTES**

9 U.S.C. § 1 *et seq.*...........................................................................5

9 U.S.C. § 201 *et seq.*.............. 1, 4, 7, 8, 9, 11, 13, 16, 17, 18, 19, 20, 25, 26, 36, 39

28 U.S.C. § 1291 .............................................................................5

28 U.S.C. § 1294 .............................................................................5

28 U.S.C. § 1330 .............................................................................5

28 U.S.C. § 1331 .............................................................................5

28 U.S.C. § 1391 .............................................................................5

28 U.S.C. § 1441 .............................................................................5

28 U.S.C. § 1602 *et seq*.....................................................................5

28 U.S.C. § 1961 ............................................................................22

D.C. Code § 15-361 *et seq.* ...............................................................29

D.C. Code § 15-381 *et seq.* ...........................................................1, 29, 30

**OTHER AUTHORITIES**

12 Moore's Federal Practice, §59.30[7] ..................................................38

Fed. R. App. P. 3(c)(1)(B) ................................................................26

Fed. R. Civ. P. 54 ..........................................................................26

Fed. R. Civ. P. 59 ........................................... 3, 7, 10, 11, 22, 23, 24, 25, 37, 38, 39

Fed. R. Civ. P. 60 ........................................... 3, 7, 9, 11, 21, 24, 34, 37, 38, 39

Nigerian Fed. High Court (Civil Procedure) Rules 2009, Order 26, Rule 12 .........14

*GE Transportation S.P.A. v. Republic of Albania*, Memorandum of Law in
    Support of Motion for Default Judgment and Confirmation of Arbitral
    Award, 2009 WL 3413397 (April 17, 2009)......................................................36

*Restatement (Third) of Foreign Relations Law (1987) ...................................36, 37

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **App.** | Joint Appendix filed by Nigeria on November 12, 2013. |
| **App. Br.** | Brief of Appellants / Cross-Appellees dated November 12, 2013. |
| **Amended Complaint** | Amended Complaint dated November 18, 2009.  App. 90. |
| **Amended Judgment** | Order and Judgment by Judge Paul L. Friedman dated March 26, 2013 and published at *Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria,* 932 F. Supp. 2d 153 (D.D.C. 2013).  App. 877, 879. |
| **Award** | Arbitral award entered in the United Kingdom in favor of Continental, dated August 14, 2008.  App. 2014. |
| **Continental** | Appellee / Cross-Appellant Continental Transfert Technique Limited. |
| **Contract** | Contract between Nigeria and Continental in 1999, as amended in 2002 and 2003.  App. 161, 420, 425. |
| ***Ex Parte* Order** | Order of the Federal High Court of Nigeria dated April 23, 2009.  App. 225. |
| **FSIA** | Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1391(f), 1441(d), and 1602 through 1611. |
| **New York Convention** | Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* |
| **Nigeria** | Appellants / Cross-Appellants the Federal Government of Nigeria, Attorney General of the Federation, and Minister of the Interior. |
| **Nigerian Order** | Order of the Federal High Court of Nigeria dated November 1, 2010.  App. 629. |

**UFMJRA**            Uniform Foreign-Money Judgments Recognition Act,
                     D.C. Code § 15-381 *et seq.*

**UK Court**         High Court of Justice, Queen's Bench Division,
                     Commercial Court in the United Kingdom.

**UK Judgment**      Order of the High Court of Justice, Queen's Bench
                     Division, Commercial Court in the United Kingdom
                     dated June 24, 2009.  App. 189.

## PRELIMINARY STATEMENT

On August 14, 2008, after a two-week, contested arbitration in London, an arbitral tribunal issued an award granting Continental the following relief: (i) ₦29,660,166,207.48 in Nigerian naira; (ii) $247,500 in U.S. dollars; and (iii) £160,793.84 in British pounds. App. 104 (the "Award"). These amounts were to be paid by Nigeria to Continental no later than August 28, 2008. Nigeria never did so.

On Continental's motion for summary judgment, the District Court held that the Award is fully enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq*. (the "New York Convention") and, *alternatively*, that a judgment confirming the Award in the United Kingdom is enforceable under the Uniform Foreign-Money Judgments Recognition Act, D.C. Code § 15-381 *et seq*. ("UFMJRA"). Nigeria is only appealing the latter portion of the District Court's holdings. Regardless of the outcome of this appeal, the Award remains fully enforceable under the New York Convention – a determination that is not being challenged by Nigeria at all.

Rather than respect its binding obligation, Nigeria has engaged in series of tactics, over more than five years and on three continents, designed to delay payment of the Award. These tactics are not in serious dispute. Both the District Court and the United Kingdom court have noted as much in their prior

1

decisions.  In its March 26, 2013 Decision, the District Court, for example,

recognized:

> Nigeria has protracted these proceedings at every stage,
> first by failing to appear, and then by attempting to
> dismiss the case and forestall confirmation of the award
> through arguments that the Court has consistently found
> meritless, sometimes bordering on the frivolous.

App. 891; *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp.

2d 153 (D.D.C. 2013) (internal quotation marks omitted).

In this appeal, Nigeria again raises arguments that were summarily

and easily dealt with below.  Moreover, Nigeria puts forth no real argument as to

*why* the District Court made a mistake below, instead repeating its meritless

arguments in an effort to suggest that they have substance.  They do not.

Nigeria makes two arguments regarding the UFMJRA and the UK

Judgment: (i) that the UK Judgment is not a "judgment" within the meaning of the

UFMJRA; and (ii) that Continental obtained the UK Judgment by fraud.  The

District Court dismissed both of these arguments in a decision dated March 23,

2010 – a decision which Nigeria is not appealing.  Nigeria did not raise these

arguments in response to Continental's motion for summary judgment, and they

are not properly before the Court.  Regardless, Nigeria fares no better on the

substance of its arguments.  Nigeria contends – without support – that the UK

Judgment does not fall within the UFMJRA because it is titled "Order" rather than

2

"Judgment." The UK Judgment is, on its face, a "judgment of a foreign state granting or denying recovery of a sum of money." Nigeria's argument that the UK Judgment was obtained by fraud is premised on what is, at best, an inaccurate recitation of the facts. Nigeria claims that the UK Judgment was obtained "without notice". This is simply incorrect. Nigeria received notice on March 13, 2009, and had more than three months to appear and contest the UK Judgment. Instead, Nigeria defaulted – a point expressly identified and relied upon by the District Court. Nigeria completely ignores these facts in its memorandum and instead inexplicably – and disingenuously – claims it did not receive notice of the UK Judgment.

Nigeria also makes two meritless arguments regarding the Court's August 3, 2011 and March 26, 2013 decisions on Continental's Rule 60(a) motion: (i) that the Court was not permitted to treat portions of that motion as a motion under Rule 59(e); and (ii) that the Court was not permitted to convert the amounts denominated in foreign currencies in the Award to United States dollars because Continental did not specifically request currency conversion in its Complaint. Yet courts routinely analyze Rule 60(a) motions under Rule 59(e) where applicable, and routinely convert foreign currencies. Nigeria itself cites to *G.E. Transport S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010), a case in which the District Court converted a judgment to dollars on similar facts.

This appeal is just the latest in Nigeria's attempt to delay satisfaction of the Award and the corresponding UK Judgment. Nigeria raises nothing of substance. Indeed, even as to the conversion arguments, Nigeria does not challenge whether or not the Award should in fact *be* converted, or claim that it was not afforded the opportunity to address the merits of the relief sought, but rather simply contends that, procedurally, Continental should have initiated a plenary action for such relief. Thus, Nigeria seeks only more delay. It seeks to require Continental to start an entirely new action to convert an enforceable judgment issued pursuant to the New York Convention from Nigerian naira into United States dollars – a result which was already fully briefed and decided by a United States District Court.

Continental's cross-appeal relates solely to the issue of the proper interest rate for pre-judgment interest. Had Nigeria paid the Award in August 2008, as it was obligated to do, Continental would have had use of the proceeds of the Award at the then-prevailing exchange rates, and for the past five years. Instead, Nigeria has had the benefit of those funds, and has fought enforcement of the Award at every turn. To fully compensate for its losses, Continental sought post-award, prejudgment interest at the then current Nigerian lending rate of 18%, which was the rate applied by the arbitral panel. The District Court awarded interest at a lower rate, despite Nigeria's extreme delay in paying the Award and

4

the fact that, in the arbitration, Nigeria itself identified a higher applicable interest rate than that used by the District Court.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), because this is a nonjury civil action against a foreign state for which the foreign state does not have immunity, and pursuant to 28 U.S.C. § 1331, as the case presents claims arising under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1330, 1391(f), 1441(d), and 1602 through 1611. The District Court had personal jurisdiction over Nigeria pursuant to 28 U.S.C. § 1330(b), because the requirements of 28 U.S.C. § 1330(a) are met and service was made pursuant to 28 U.S.C. § 1608.

This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1), because the two orders appealed from are final judgments by a district court within this Circuit. On August 3, 2011, the District Court entered a final Order and Judgment granting summary judgment to Continental. App. 775. Nigeria filed a notice of appeal on September 1, 2011. App. 800. The District Court entered an Amended Order and Judgment in Continental's favor on March 26, 2013 in the amount of $276,111,640.96 plus post-judgment interest. App. 877-78. Nigeria filed a notice of appeal on April 25, 2013. App. 899. Continental

5

timely filed its Notice of Cross-Appeal of the March 26, 2013 Amended Order and

Judgment on May 7, 2013.  App. 901.

Accordingly, this Court has jurisdiction over Nigeria's appeals of the

August 3, 2011 and March 26, 2013 decisions, and Continental's cross-appeal of

the March 26, 2013 decision.  As set forth below, however, the Court does not

have jurisdiction over the decision entered by the District Court on March 23,

2010, as Nigeria did not appeal that decision.  *See* Argument, § I, *infra*.

## STATEMENT OF ISSUES PRESENTED

I.  **Issues Presented By Nigeria's Appeals**

1.    Whether the District Court properly entered judgment for Continental

pursuant to the UFMJRA, based on the final, conclusive, and enforceable judgment

entered on June 24, 2009 by a court in the United Kingdom.

2.    Whether the District Court properly entered judgment for Continental

pursuant to the UFMJRA where Nigeria failed to appear before the court in the

United Kingdom despite being on notice of the proceedings, then claimed that

Continental should have informed the court of an expired temporary restraining

notice Nigeria obtained *ex parte* from a Nigerian court.

3.    Whether the District Court properly exercised its discretion in treating

Continental's post-judgment motion pursuant to Federal Rule of Civil Procedure

6

60(a) as a timely filed motion pursuant to Federal Rule of Civil Procedure 59(e), after full briefing by both parties regarding the availability of such relief.

4.    Whether the District Court properly issued an Amended Order and Judgment dated March 26, 2013, converting foreign currency amounts to U.S. dollars, where Continental included a broad request for relief in its Amended Complaint and listed currency conversions in its proposed order submitted with its motion for summary judgment.

5.    Whether the District Court's Amended Order and Judgment is consistent with this Court's decision in *Ciralsky v. Central Intelligence Agency*, 355 F.3d 661, 673 (D.C. Cir. 2004), which the District Court itself cited as support for the standard for Rule 59 motions.

## II.    <u>Issues Presented By Continental's Appeal</u>

1.    Whether the District Court properly denied Continental's request for prejudgment interest at the rate of 18% in light of Nigeria's long pattern of delay and Continental's loss of the use of the money owed by Nigeria since 2008.

## STATEMENT OF THE CASE

Continental brought this action in order to confirm the final arbitration award rendered on August 14, 2008 in the United Kingdom pursuant to the New York Convention.  Nearly a year later, while this case was pending in the District Court, Continental obtained a judgment enforcing the Award in the United

7

Kingdom and subsequently amended its complaint to include a request that the Court enforce the UK Judgment pursuant to the UFMJRA.

Continental's New York Convention and UFMJRA claims seek the same basic relief – confirmation of the arbitration Award, or damages related thereto, in the United States so that Continental can enforce the Award and take steps necessary to make Nigeria finally comply with its longstanding obligation to satisfy the Award.  Either claim is sufficient to warrant judgment in Continental's favor and resolve the case.

On March 23, 2010, the District Court issued an Order and accompanying decision regarding four pending motions, one of which was Nigeria's motion to dismiss the Amended Complaint based on Nigeria's argument that the UK Judgment had been obtained by fraud.  App. 333, 335; *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46 (D.D.C. 2010).  Nigeria's motion to dismiss was converted to a motion for summary judgment on that particular defense, because Nigeria relied on matters outside the Amended Complaint, and was denied.  App. 333; App. 358; 697 F. Supp. 2d at 63. Nigeria never made any argument whatsoever regarding Continental's UFMJRA claim after this decision.  Nigeria did not appeal that Order at the time it was issued, and does not appeal this decision now.

On August 3, 2011, the District Court entered summary judgment for Continental on both the New York Convention claim and the UFMJRA claim. App. 775, 776; *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161 (D.D.C. 2011). The August 3, 2011 Order and Judgment did not include the conversion of the foreign currency amounts in the Award, and was silent as to pre- and post-judgment interest, although Continental requested conversion and interest in its summary judgment papers. As a practical matter, Continental would face serious difficulty executing against the assets of Nigeria in the United States in connection with a judgment denominated in Nigerian naira and British pounds. Moreover, given the depreciation of the naira relative to the U.S. dollar since 2008, the current equivalent value of the naira portion of the Judgment is significantly less than what the arbitral tribunal awarded Continental in 2008.

Accordingly, Continental moved pursuant to Rule 60 to correct the original Judgment to include converted foreign currencies and pre- and post-judgment interest. The District Court issued a decision on Continental's fully-briefed Rule 60 motion on March 27, 2012. App. 824, 826; *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277 (D.D.C. 2012). The Court granted Continental's request for post-judgment interest, and with respect to Continental's conversion and post-award, pre-judgment interest request, the District Court found that these requests were not properly granted under Rule 60,

but could be available pursuant to Rule 59.  The District Court sought additional briefing from the parties regarding both Continental's substantive entitlement to conversion and pre-judgment interest, and whether these requests fall within the scope of available relief pursuant to Rule 59.  Nigeria and Continental both submitted additional briefing.

On March 26, 2013, the District Court issued a decision regarding Continental's request pursuant to Rule 59 and issued an Amended Order and Judgment.  App. 877, 879; *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153 (D.D.C. 2013).  The District Court granted Continental's request for conversion, holding that, given the currency depreciation, and in order to avoid rewarding Nigeria for its protracted delay, the proper conversion rate is the rate in effect at the time of the Award.  The District Court also granted Continental's request for pre-judgment interest, although the interest rate was lower than that requested by Continental, despite the fact that Nigeria never opposed the rate requested.  The District Court issued an Amended Order and Judgment reflecting its resolution of Continental's motion.  App. 877.

In Case No. 11-7103, Nigeria appeals the Order and Judgment dated August 3, 2011 that granted Continental's motion for summary judgment.  App. 775.  In Case No. 13-7068, Nigeria appeals the Amended Order and Judgment dated March 26, 2013.  App. 877.  In Case No. 13-7074, Continental cross-appeals

10

solely from that portion of the March 26, 2013 Amended Order and Judgment that denied Continental's request for pre-judgment interest at the rate of 18%.

Nigeria's appeal, if granted, would not change the substance of the Judgment. Nigeria does not appeal the District Court's confirmation of the Award pursuant to the New York Convention, which is sufficient to support judgment in Continental's favor. Nor does Nigeria appeal the District Court's holding that Continental is entitled to conversion of the foreign currency amounts in the original Judgment; Nigeria merely objects to the procedure employed. Nigeria also does not appeal the District Court's award of pre-judgment interest to Continental.[1]

Instead, Nigeria resurrects two arguments regarding Continental's UFMJRA claim that: (i) are without any factual or legal support; (ii) were rejected by the District Court in a decision that is not on appeal; (iii) Nigeria did not raise at the summary judgment stage below; and (iv) would not change the substantive outcome of this case even if this Court accepted them. The arguments in Nigeria's appellate brief focus on the propriety of the District Court's treatment of Continental's Rule 60 motion as a Rule 59 motion, and the fact that Continental did not specifically request currency conversion in its Complaint. These

---

[1]     For its part, Continental appeals the Amended Order and Judgment only to the extent of the interest rate used for pre-judgment interest, which was significantly lower than that requested by Continental.

11

arguments are procedural arguments only that do not challenge Continental's

entitlement as a matter of law to the relief contained in the Amended Order and

Judgment.  The District Court was well within its discretion in granting that relief,

and the decisions should be affirmed.[2]

## STATEMENT OF RELEVANT FACTS

**I.     Nigeria Breaches its Contract with Continental and is
        Ordered to Pay Damages After Two-Week Contested Arbitration**

In 1999, as amended in 2002 and 2003, Nigeria and Continental

entered into an arms-length commercial contract for the manufacture and sale of

computer-compatible identification cards called Combined Expatriate Residence

Permit and Alien Cards (as amended, the "Contract").  App. 161, 420, 425.  In the

Contract, the parties agreed to submit to arbitration "any dispute claim or

difference which may arise out of or in relation to this contract and touching on the

performance or breach thereof."  App. 169.

Upon Nigeria's repeated failure to comply with its obligations under

the Contract, Continental initiated arbitration.  Over the course of two weeks in

June 2008, a fully contested arbitration was held in London.  Continental and

Nigeria were both represented by experienced counsel, called witnesses, and

---

[2]     Even if the Court were to accept these procedural arguments, Nigeria itself
proposes that the next step would be for Continental to initiate a plenary
proceeding despite the fact that these issues have been fully briefed by both
parties and already decided by the District Court.  *See* Brief of
Appellants/Cross-Appellees dated November 12, 2013 ("App. Br.").

12

produced documents relevant to their positions.  *See* App. 116.  On August 14,

2008, the arbitral tribunal issued the 51-page Award in favor of Continental.  App.

104.  Pursuant to the Award, Nigeria was ordered to pay, within 14 days, damages

and interest in the amounts of ₦29,660,166,207.48, USD$247,500, and

£160,793.84.  App. 155.

## II.    Continental Seeks Confirmation of the Award
   in the United States and United Kingdom,
   <u>Nigeria Defaults and then Manufactures a Defense</u>

On November 24, 2008, Continental filed the Complaint in the

District Court seeking to enforce the Award under the New York Convention.

App. 12.  Nigeria was served pursuant to the FSIA on December 11, 2008, and had

until February 9, 2009 to move against the original Complaint.  *See* App. 337-38;

697 F. Supp. at 53.  Nigeria failed to do so despite being properly served.

Continental had Nigeria's default entered by the clerk, and moved for a default

judgment on February 18, 2009.  *See* App. 338.

On December 9, 2008, Continental also applied to have the Award

recognized in the United Kingdom in order to render it enforceable there.  The

High Court of Justice, Queen's Bench Division, Commercial Court in the United

Kingdom (the "UK Court") issued an interim order confirming the Award on

December 10, 2008.  App. 177.  The December 10 Order was served on Nigeria on

March 13, 2009, and by its terms, Nigeria had until June 4, 2009 to respond.[3]  App.

177, 180-87.

Meanwhile, in the proceeding below, Nigeria waited until March 23,

2009, more than three months after being served with the Complaint and after the

clerk's entry of default, to appear before the District Court seeking a 45-day stay of

the case.  App. 338-39.  One month later, on April 20, 2009, Nigeria moved before

a Nigerian court: (i) on notice for an order vacating the Award; and (ii) *ex parte*,

for an order restraining Plaintiff from seeking or continuing to seek the recognition

and enforcement of the Award in any part of the world.  These motions were made

notwithstanding the fact that Nigeria had inexplicably delayed more than five

months after its time to move to vacate the Award had expired under Nigerian law.

On April 23, 2009, Nigeria's *ex parte* motion was granted (the "*Ex Parte* Order").

App. 225.[4]

---

[3]     The December 10 Order put Nigeria on notice that pursuant to the State
Immunity Act 1978 of the United Kingdom, Nigeria "ha[d] the right to make
an application to the Court within 2 months and 22 days after service of the
Order to set aside this Order."  The December 10 Order could not be
enforced until after: (i) the end of the period of 2 months and 22 days, or (ii)
any application made by Nigeria within that period reached final disposition.
App. 492.

[4]     Under Nigerian law, *ex parte* orders are valid for 14 days absent written
extension.  There was no written extension of the Ex Parte Order, which
therefore lapsed.  Order 26 Rule 12 of the Nigerian Rules of Civil Procedure
(available at http://www.wipo.int/wipolex/en/
text.jsp?file_id=269278) states in full:

While by this time Nigeria had appeared in the United States and in Nigeria, it nevertheless had not responded or appeared in the United Kingdom action despite having been served in that action. Following Nigeria's default, on June 24, 2009, the High Court issued a Judgment confirming that the December 10 Order was final and enforceable (the "UK Judgment"). The UK Court confirmed that the UK Judgment "is absolute, and the Claimant is entitled to apply for enforcement of this judgment." App. 189.

On November 18, 2009, with Nigeria's March 23, 2009 motion to vacate its default and for a stay fully briefed but not yet decided, Continental amended its original complaint in the United States to add a claim for enforcement of the Judgment under the UFMJRA (the "Amended Complaint"). App. 90. Continental served the Amended Complaint on Nigeria's counsel via Federal Express. App. 102. As it had in seeking the *Ex Parte* Order in response to the entry of default, Nigeria again set out to manufacture a defense. On November 23, 2009, five days after its receipt of the Amended Complaint, Nigeria appeared in the

---

(1)    No order made on a motion *ex parte* shall last for more than 14 days after the party or person affected by the order has applied for the order to be varied or discharged or last for another 14 days after application to vary or discharge it has been argued.

(2)    If a motion to vary or discharge an *ex parte* order is not taken with 14 days of its being filed, the *ex parte* order shall automatically lapse.

15

United Kingdom – for the first time since being served with Continental's claim in March 2009 and five months after its deadline to challenge the December 10 Order – and moved to vacate the UK Judgment.  App.515.  Nigeria then moved the court below to dismiss the Amended Complaint, relying on its belated United Kingdom motion.  App. 194.

**III.    Courts in the United States, the United Kingdom,
and Nigeria Issue Orders in Favor of Continental**

Despite Nigeria's attempt to avoid satisfying the Award, and belated applications in Nigeria, the United Kingdom, and the United States, courts in all three countries have confirmed or refused to vacate the Award.

**A.    The District Court Denies Continental's Motion to Dismiss**

On March 23, 2010, the District Court denied Defendants' motions to dismiss both of Continental's claims.  App. 333, 335; 697 F. Supp. 2d at 65.  The District Court held that the New York Convention applied to the Award, that Nigeria had waived sovereign immunity under the FSIA, and that it had personal jurisdiction over Nigeria.  App. 343-45; 697 F. Supp. 2d at 56-57.  The District Court also refused to dismiss Continental's claims on the grounds of *forum non conveniens*.  App. 345; 697 F. Supp. 2d at 58.

The District Court also denied Nigeria's request for dismissal or adjournment under the New York Convention.[5]  In rejecting Nigeria's argument based on Article VI of the New York Convention, which gives courts discretion to adjourn actions seeking enforcement of awards pending foreign proceedings, the District Court noted, among other things, that "the procedural history of this case strongly indicates that the defendants moved to set aside the award in Nigeria *only in order to manufacture a defense*" to this proceeding.  App. 351; 697 F. Supp. 2d at 60.[6]

Finally, the District Court denied Nigeria's motion for a stay under the UFMJRA.  Treating Nigeria's motion as a motion for summary judgment, the District Court held that: (i) the Judgment "constitutes a judgment within the meaning of the UFMJRA"; and (ii) there was no fraud in obtaining the Judgment.  App. 356, 359; 697 F. Supp. 2d at 63-64.  The Court further concluded that "[t]here is no evidence that Continental is in any way responsible for Nigeria's

---

[5]   Among other things, the Court held that Article V of the New York Convention is simply inapplicable, stating that:

[F]or all of Nigeria's conclusory references to the arbitration award as 'suspended,' Nigeria has presented absolutely no evidence that any court, including the Federal High Court in Nigeria, has issued any ruling whatsoever on the substantive validity of the award.

App. 349; 697 F. Supp. 2d at 59.

[6]   Overall, the Court held that adjournment was inappropriate "[g]iven the timing of Nigeria's attempts to set aside the award, the uncertainty surrounding proceedings in Nigeria, and the federal policy favoring arbitration and its enforcement."  App. 355; 697 F. Supp. 2d at 62.

failure to appear [before the High Court] or that Continental otherwise prevented

Nigeria from defending itself."  App. 359; 697 F. Supp. 2d at 64.[7]  Significantly,

Nigeria did not appeal this decision then, and does not appeal it now.  *See*

Argument, § I, *infra*.

> **B.      The UK Court Denies Nigeria's Motion to Set Aside the Judgment**

One week following the District Court's opinion denying Nigeria's

motion to dismiss, the court in the United Kingdom issued a decision on Nigeria's

belated motion to set aside the UK Judgment.  App. 513.  Nigeria sought to set

aside the UK Judgment based on what appears to be the United Kingdom's

codification of Article V(1)(e) of the New York Convention, which allows a court

to refuse to confirm an award where it has been "set aside or suspended by a

competent authority in the country in which, or under the law of which, it was

made."  App. 516.  The UK Court, like the District Court, rejected this defense

because the Award had not been set aside in Nigeria.  App. 517.

Nigeria also unsuccessfully argued to the UK Court, in similar fashion

to the argument made to District Court below, that the UK Judgment should be set

aside because Continental failed to disclose the Nigerian proceedings and the

proceedings below to the UK Court in applying for the Judgment.  Like the District

---

[7]      The Court also granted Defendants' motion to vacate the entry of default and
denied Continental's motion for default judgment, because Nigeria's default
was rendered moot when Continental filed the Amended Complaint.  App.
341-42; 697 F. Supp. 2d at 55.

Court, the UK Court rejected "the argument that there was any material nondisclosure, or, if there has been, that it should lead to the judgment being set aside." App. 517-18. *See* Argument, § II.B, *infra*.

### C.    The Nigerian Court Denies Nigeria's
####    Motion to Set Aside the Award

On November 1, 2010, the Federal High Court of Nigeria issued a Judgment-Order (the "Nigerian Order") regarding Nigeria's motion to set aside the Award, and confirmed that the Award is valid and Continental was free to continue to seek enforcement and recognition of the Award anywhere in the world. App. 629. The Order states, among other things, that the Award "cannot be set aside", is "valid and enforceable", and is "accorded recognition and enforcement." In addition, the Nigerian Order confirmed that Continental could continue seeking enforcement of the Award anywhere in the world. The Nigerian Order is supported by a Nigerian Judgment. Continental attached both the Nigerian Order and Nigerian Judgment to a Status Report it provided to the District Court on January 11, 2011. App. 625, 629, 634.

### D.    The District Court Grants
####    Continental's Motion for Summary Judgment

On July 12, 2010, following the District Court's March 2010 decision, Continental moved for summary judgment on both counts of the Amended Complaint – pursuant to the New York Convention and pursuant to the UFMJRA.

19

Nigeria opposed the summary judgment motion based on New York Convention grounds, but did not address the UFMJRA.  On August 3, 2011, this Court granted Continental's motion for summary judgment in full, and issued an Order and accompanying Judgment.  App., 775, 776; 800 F. Supp. 2d at 164-65.  In granting summary judgment, the District Court held, *inter alia*, that: (i) there was "no reason to refuse to enforce the award" pursuant to the New York Convention, particularly where the Nigerian court had by that time ruled in favor of Continental on Nigeria's motion to set aside the award; and (ii) Nigeria "failed to contest Continental's claim that the [UK Judgment] is enforceable by this court under the UFMJRA" and, in any event, that the UK Judgment was enforceable under the UFMJRA.  App. 780-81; 800 F. Supp. 2d at 165.  Unlike the March 2010 Order, Nigeria is appealing this August 2011 decision.

## IV.  CONTINENTAL SEEKS TO MODIFY THE JUDGMENT TO CONVERT FOREIGN CURRENCY AMOUNTS AND INCLUDE INTEREST

The Judgment accompanying the August 3, 2011 Decision did not contain any conversion of the foreign currency components of the Award.  In order to execute and enforce the Judgment against Nigeria's property in the United States, Continental expected – and continues to expect – that it will need the Judgment to be in U.S. dollars.  Therefore, along with its July 12, 2010, summary

judgment motion, Continental had submitted a proposed order granting relief as

follows:

> ORDERED that judgment is entered in the amount of _____ ($250,521,775USD plus ___ days of interest, from August 14, 2008 to the date of judgment, at 18%) in favor of Plaintiffs and against Defendants, jointly and severally, and it is
>
> FURTHER ORDERED that Plaintiff is awarded post-judgment interest at a rate of ____ % and costs in the amount of $_____ USD to be taxed on the amounts awarded above, and it is
>
> FURTHER ORDERED that Plaintiff is awarded the costs of this action in the amount of $_____ USD.

App. 525.  The proposed order requested a judgment in United States dollars only,

converted at the rates specifically identified in paragraph 16 of the accompanying

Statement of Material Facts Not in Dispute – rates which were never disputed by

Nigeria – and at an identified post-award, prejudgment interest rate.  App. 525.

Because the August 3, 2011 Judgment did not include a total U.S.

dollar amount as requested by Continental in the proposed order, on August 23,

2011, Continental timely moved, pursuant to Rule 60(a) of the Federal Rules of

Civil Procedure, to correct the Judgment to reflect the amount of

USD$423,184,115.29 plus applicable post-judgment interest.[8]  App., 782-86.

---

[8]     The breakdown for this amount was reflected in the Declaration of Joel A. Hankin dated August 23, 2011 and the exhibits thereto.  App. 787-88.

On March 27, 2012, the Court granted Continental's motion in part, agreeing to correct its Order and Judgment to include post-judgment interest as required by 28 U.S.C. § 1961(a), and held it in abeyance in part, pending additional briefing by both parties.  App. 824, 826; 850 F. Supp. 2d at 284, 288.  The Court requested further briefing on the following four questions:

> (1) whether Continental was entitled at the time of judgment to conversion of its foreign-currency awards into U.S. dollars at the specified exchange rates;
>
> (2) whether Continental's request for such conversion after judgment satisfies the requirements of Rule 59(e) for altering or amending a judgment;
>
> (3) whether Continental was entitled at the time of judgment to prejudgment interest at a rate of eighteen percent; and
>
> (4) whether Continental's request for such interest after judgment satisfies the requirements of Rule 59(e) for altering or amending a judgment.

Continental filed its Supplemental Memorandum of Law on April 30, 2012.  App. 841.  Nigeria also filed an additional memorandum of law on May 30, 2012.  App. 855.  Continental filed a reply memorandum on June 13, 2012.  App. 867.

On March 26, 2013, the District Court granted Continental's request and issued its Amended Order and Judgment holding that, *inter alia*:

- Continental was entitled to conversion of Nigeria's foreign currency obligations;

- Those amounts would be converted at the rates applicable on the date of the Award because of the significant depreciation in

22

Nigeria's currency since that time, allowing Continental to "receive a judgment that reflects the true value of the dollars of the arbitral award at the time it issued, instead of one whose value has eroded as a result of Nigeria's success in delaying its confirmation";

- Currency conversion was necessary to prevent a manifest injustice and therefore within the scope of Rule 59(e) relief;

- Continental was entitled to post-award, prejudgment interest; and

- Post-award, prejudgment interest was within the scope of Rule 59(e) relief.

App. 877, 879; 932 F. Supp. 2d 153 at 161-166.  Nigeria chose to appeal this March 2013 decision.

## SUMMARY OF ARGUMENT

Nigeria makes two arguments regarding the UFMJRA and the UK Judgment: (i) that the UK Judgment is not a "judgment" within the meaning of the UFMJRA; and (ii) that Continental obtained the UK Judgment by fraud.  The District Court dismissed both of these arguments in its March 23, 2010 Order – which Nigeria is not appealing.  Moreover, Nigeria raised no argument whatsoever about Continental's UFMJRA claim in opposing the summary judgment motion that led to the rulings on review.  Therefore, these arguments are not properly before this Court and should be dismissed for lack of jurisdiction and/or as having been waived.  Second, even if addressed on the merits, the UK Judgment is plainly within the scope of the UFMJRA.  The UK Judgment was not obtained by fraud,

23

but was obtained after Nigeria failed to appear in the United Kingdom despite being on notice of that proceeding.

Nigeria identifies three arguments regarding the Court's August 3, 2011 and March 26, 2013 decisions on Continental's Rule 60(a) motion: (i) that the Court was not permitted to treat portions of that motion as a motion under Rule 59(e); (ii) that the Court was not permitted to convert the foreign currencies in the Award to United States dollars; and (iii) that the decisions below are inconsistent with *Ciralsky v. Central Intelligence Agency*, 355 F.3d 661 (D.D.C. 2004). Nigeria offers no support for these assertions. Courts routinely treat Rule 60(a) motions under Rule 59(e) when applicable, and routinely convert awards to United States dollars. Nigeria cites nothing to the contrary.

Finally, Continental contends that the District Court's use of a 3.375% rate applied to post-award, prejudgment interest was an abuse of discretion. Nigeria has had the benefit of Continental's money for more than five years, and in that time has repeatedly delayed and raised meritless arguments on three continents. Interest at an appropriate rate is necessary to both fully compensate Continental and because without it the losing party in the arbitration has an incentive to withhold payment.

## STANDARD OF REVIEW

With respect to Nigeria's claims that the UK Judgment is not a final, conclusive and enforceable judgment (Issue Presented I.1) and that it was obtained by fraud and therefore is not entitled to recognition under the UFMJRA (Issue Presented I.2), Continental submits that there is no appellate jurisdiction, but if the Court does review that ruling then it should do so only for abuse of discretion.  *See Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1004 (5th Cir. 1990).[9]

The District Court's rulings on Continental's motion to alter or amend the judgment pursuant to Rule 59(e) (Issues Presented I.3, I.4, I.5 and II.1) should be reviewed for abuse of discretion.  *Ciralsky*, 355 F.3d at 671.

## ARGUMENT

**I.    NIGERIA'S UFMJRA ARGUMENTS ARE MOOT, NOT PROPERLY BEFORE THIS COURT BECAUSE NIGERIA DID NOT APPEAL THE 2010 DECISION, AND WAIVED**

The District Court held that the Award is fully enforceable under the New York Convention and, *alternatively*, that the UK Judgment confirming the Award is enforceable under the UFMJRA.  Nigeria is appealing *only* the latter portion of the District Court's holdings.  Thus, regardless of the outcome of this

---

[9]    Nigeria argues that the Court should apply a *de novo* standard.  While Continental contends that the UFMJRA issues were discretionary and should be reviewed only for abuse of discretion, as shown herein, even the more liberal *de novo* standard is easily met.

appeal, the Award remains fully enforceable under the New York Convention – a determination that is not being challenged by Nigeria at all.  Based on this reason alone, Nigeria's challenge under the UFMJRA is moot, and Nigeria is effectively asking for an advisory opinion.  This is improper.  *See District of Columbia v. Barry*, 387 F.2d 860, 861 (D.C. Cir. 1967) (dismissing appeal and holding that "a federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants before it").  *See also, American Tel. & Tel. Co. v. F.C.C.*, 602 F.2d 401, 409 n. 48 (D.C. Cir. 1979) (stating that "given one clearly adequate basis for the order appealed, it is inconceivable that an appellate court would undertake a wholly advisory exploration of the other basis."); *In re Doerner, Saunders, Daniel & Anderson, L.L.P.*, 99 Fed.Appx. 179, 181 (10th Cir. 2004) (noting that "where a district court's decision is supported on alternate independent grounds, the failure to appeal both of those grounds dooms the appeal," finding a lack of appellate jurisdiction); *Zajanckauskas v. Holder*, 611 F.3d 87, 90 (1st Cir. 2010);  *In re Atighi*, 243 Fed.Appx. 283, 285 (9th Cir. 2007).

Second, the Federal Rules of Appellate Procedure require that a notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B).  Accordingly, "if an appeal is noticed only from part of a judgment, then no jurisdiction exists to review other portions of the judgment."

*Brookens v. White*, 795 F.2d 178, 180 (D.C. Cir. 1986); *see also Thomas v. D.C. Gov't*, No. 08-5464, 2009 WL 2414418, at *1 (D.C. Cir. May 7, 2009); *Nagi v. C.E. Fleming Corp.*, No. 95-7259, 1996 WL 680214, at *1 (D.C. Cir. Oct. 21, 1996); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995); *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1529 (11th Cir. 1987). Nigeria makes two arguments on appeal regarding the UFMJRA and the UK Judgment: (i) the UK Judgment is not a "judgment" within the meaning of the UFMJRA (Issue Presented I.1); and (ii) Continental obtained the UK Judgment by fraud because it allegedly did not tell the UK Court about the *Ex Parte* Order obtained by Nigeria that purported to restrain Continental from enforcing the Award (Issue Presented I.2). Neither of those issues are properly before this Court.

        The District Court rejected both of these arguments in its March 23, 2010 decision. The first argument was rejected as part of the District Court's denial of Nigeria's motion to dismiss, and the District Court converted the second argument, regarding fraud, into a motion for summary judgment that was ultimately denied. App. 356-59; 697 F. Supp. 2d at 63-65; *see* Argument, § II, *infra*. Nigeria did not appeal this decision. The 2010 decision is not listed in the Notice of Appeal filed on April 25, 2013. App. 899. Nor was it listed in the Notice of Appeal filed on September 1, 2011. App. 800. Nigeria likewise did not list the 2010 decision in its Certificate as to Parties, Rulings, and Related Cases

27

filed on May 31, 2013.  An intent to appeal the 2010 decision cannot be inferred from Nigeria's actions.  On the contrary, the fact that Nigeria listed two out of the four decisions issued in this case indicates that it did not intend to appeal the 2010 decision.  *See Brookens*, 795 F.2d at 180.

Finally, Nigeria has waived its UFMJRA arguments because it did not raise any argument related to the UFMJRA in the briefing on the motions under review.  *See D.C. v. Air Florida, Inc.,* 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal,"); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (citation omitted).  As the District Court noted in its original Order and Judgment:

> Nigeria has failed to contest Continental's claim that the order entered on June 24, 2009 by the English court is enforceable by this court under the UFMJRA; indeed, Nigeria's memorandum in opposition to Continental's motion for summary judgment does not even mention Continental's UFMJRA claim.

App. 780-81; 800 F. Supp. 2d at 165.  Nigeria's briefing in relation to the August 2011 Judgment and March 2013 Amended Judgment does not deal with the merits of the UFMJRA claim at all.  App. 855.  Nigeria simply did not raise these arguments below in connection with the decisions currently under appeal.

28

Nigeria's appeal regarding Continental's UMFJRA claim should therefore be

dismissed for lack of jurisdiction, or because Nigeria waived the arguments it now

makes on appeal.

## II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON CONTINENTAL'S UFMJRA CLAIM

Even if Nigeria's issues on appeal relating to Continental's UFMJRA

claim were properly before the Court, the District Court properly rejected Nigeria's

two arguments.

### A.    The UK Judgment Plainly Falls Within The Scope Of The UFMJRA

The UFMJRA defined "foreign-money judgment" as "any judgment

of a foreign state granting or denying recovery of a sum of money, other than a

judgment for taxes, a fine or other penalty, or a judgment for support in

matrimonial or family matters." D.C. Code § 15-381.[10]  The UFMJRA applied "to

any foreign-money judgment that is final and conclusive and enforceable where

rendered even though an appeal therefrom is pending or it is subject to appeal."

D.C. Code § 15-387. A foreign-money judgment is "conclusive between the

---

[10]    The version of the UFMJRA relied on by Continental was replaced in February 2012, after the District Court issued the original Judgment but before the Amended Judgment. The Uniform Foreign-Country Money Judgment Recognition Act is now found at D.C. Code § 15-361 *et seq.* The new statute defines foreign judgment as simply "a judgment of a court of a foreign country." D.C. Code. § 15-362. Under either version of the statute, the District Court properly granted Continental's claim.

29

parties to the extent that it grants or denies recovery of a sum of money."  D.C.

Code § 15-382.[11]

The Judgment entered on June 24, 2009 by the UK Court is final,

conclusive, binding and enforceable against Nigeria under the laws of the United

Kingdom.  *See* App. 189.  As the District Court held in 2010 – in a decision which

Nigeria is not appealing – the language of the UK Judgment "makes clear" that

"the order grants Continental the right to recover 'a sum of money'" and it "even

refers to itself as a judgment."  App. 356; 697 F. Supp. 2d at 63.

Nigeria's argument that the Judgment does not fall within the

UFMJRA because it is titled "Order" rather than "Judgment" is without merit.

App. Brief, 17.  As it did below, Nigeria fails to cite any legal authority in support

of this argument.  App. 356; 697 F. Supp. 2d at 63 ("Nigeria has cited absolutely

no authority suggesting that the order does not carry the force of a judgment").

The Judgment is, on its face, a "judgment of a foreign state granting or denying

recovery of a sum of money."  *See* D.C. Code § 15-381.  Nigeria points to nothing

to suggest otherwise.  In fact, Nigeria repeatedly referred to the decision as a

"Judgment" in documents filed in the District Court.  App. 198, 204, 205.

---

[11]     The replaced statute likewise provides that it applies to a foreign-country judgment that "[g]rants or denies recovery of a sum of money" and is final, conclusive, and enforceable under the law of the country where it is rendered.  D.C. Code § 15-363.

30

**B.**     <u>**Continental Properly Obtained The UK Judgment**</u>

Nigeria next contends that the UK Judgment was obtained by fraud because Continental purportedly failed to inform the UK Court of the then pending proceedings in Nigeria and the Nigerian court's *Ex Parte* Order.  As the District Court recognized in 2010, this argument is wholly without merit.

At the outset, bare allegations of fraud do not create a basis for non-recognition under the UFMJRA.  *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. People's Republic of Congo*, 729 F. Supp. 936, 943 (S.D.N.Y. 1989) ("A party must do more than merely assert fraud in order to have a foreign judgment set aside"); *Bank of Nova Scotia v. Tschabold Equipment Ltd.*, 754 P.2d 1290, 1295 (Wash. Ct. App. 1988) (rejecting defense of fraud where there was "no evidence ScotiaBank deliberately made a false statement to the court").  Nigeria must show "[c]lear and convincing evidence of fraud . . . in order successfully to attack a foreign judgment."  *National Union*, 729 F. Supp. at 943 (quoting *Clarkson Co. v. Shaheen*, 544 F.2d 624, 631 (2d Cir. 1976)).  In *National Union*, the Congo argued that the default judgment at issue was obtained by "constructive fraud" because the "English court was 'misled' with respect to the Congo's attempt to obtain an adjournment of [a] hearing," and essentially argued that plaintiff "did not do enough to communicate defendant's desire for adjournment to the Court."  *Id.*  The *National Union* court found this allegation of fraud unavailing because

31

"there [was] simply no evidence . . . that [plaintiff] misled the Court or the Congo, intentionally or otherwise." *Id.*

Here, Nigeria fails to sufficiently demonstrate any instance of fraud on Continental's part, and certainly offers no facts from which this Court can infer that Continental misled the High Court, let alone any indication of fraudulent intent. In fact, the *Ex Parte* Order had not yet been issued when the interim order was sought in December 2008, and had lapsed when Continental applied to make the interim award final on June 23, 2009. *See* n. 4, *supra*. Thus, even assuming *arguendo* that Continental had a duty to inform the UK Court prior to the final order, there would have been no reason to do so because the order was no longer valid. Defendants' argument is therefore that Continental failed to apprise the UK Court of an expired order that was issued in Nigeria related to a defendant who had defaulted in appearing in the United Kingdom. Such an argument has no merit and clearly does not constitute a fraud on the court.[12]

---

[12]     Indeed, the UK Court rejected Nigeria's fraud argument when Nigeria sought to set aside the UK Judgment. The court held that there was no fraud because in the type of proceeding before it "any duty of disclosure would be a limited one and would ordinarily relate to the English proceedings" and such duty "did not extend to the Nigerian proceedings, still less the US proceedings." Moreover, the Nigerian proceedings were not relevant to Continental's entitlement to judgment where there was a "valid and subsisting award" that had not been set aside. The UK Court therefore "reject[ed] any argument that there was any material non-disclosure, or, if there [had] been, that it should lead to the judgment being set aside." App. 517-18.

Addressing this exact argument, the District Court, converting

Nigeria's motion to dismiss into one for summary judgment, held that Nigeria

failed to show "extrinsic fraud" because, among other things:

> Had the defendants appeared in the English enforcement
> action, they presumably would have had ample
> opportunity to bring related proceedings to the English
> court's attention – but the defendants did not bother to
> appear. They do not dispute that they were served with
> Continental's initial application for enforcement of the
> arbitral award in the United Kingdom or that they
> nevertheless failed to make a timely appearance in that
> action to contest the application. There is no evidence
> that Continental is in any way responsible for Nigeria's
> failure to appear or that Continental otherwise prevented
> Nigeria from defending itself.

App. 259; 697 F. Supp. at 64. Nigeria "do[es] not dispute that [it was] served with

Continental's application for enforcement of the arbitral award in the United

Kingdom." *Id.*[13]

Nigeria cannot point to any reason why the District Court should have

denied Continental's summary judgment motion as to its UFMJRA claim, and this

Court should therefore affirm.

---

[13]  There is no question that, like the District Court did here, courts can enforce
default judgments under the UFMJRA where the defendant failed to appear
in the foreign proceeding despite adequate notice. *See, e.g., Canadian
Imperial Bank of Commerce v. Saxony Carpet Co., Inc.*, 899 F. Supp. 1248,
1254 (S.D.N.Y. 1995); *Nat'l Union*, 729 F. Supp. at 942; *Cosmos Trading
Corp. of Panama v. Banco Nacional de Cuba*, No. 06-2935, 2006 WL
4515304, at *6 (E.D. La. Nov. 2, 2006). Moreover, federal courts "have
consistently held that the English court system provides an impartial tribunal
and procedures that comport with due process." *Erbe Elektromedizin
GMBH v. Canady*, 545 F. Supp. 2d 491, 495 (W.D.Pa. 2008).

### III.     **CONTINENTAL PROPERLY SOUGHT CURRENCY CONVERSION**

Nigeria argues that Continental did not specifically seek conversion of the foreign currency portions of the Award in its Amended Complaint, and therefore "did not give [Nigeria] adequate notice" that it would seek conversion of the foreign currencies (Issue Presented I.4).  App. Br. at 21.  Nigeria's argument should be rejected for several reasons.

First, Continental did request currency conversion and Nigeria had a full opportunity to brief this issue.  Both the original Complaint and Amended Complaint included a prayer for relief requesting "such other and further relief as this Court deems just, proper and equitable."  App., 19, 100.  When it moved for summary judgment, Continental submitted a proposed order specifically requesting that the judgment be granted in U.S. dollars only and identified a total U.S. dollar amount for the components awarded in U.S. dollars, naira and pounds – $250,521,775 – an amount reached using the only conversion rates ever identified by Continental.  App. 525-26.  Nigeria never objected to this request prior to the original Judgment, nor did it challenge Continental's proposed conversion rates.  Following the original Judgment, the parties engaged in two rounds of briefing regarding conversion and other issues, first on Continental's Rule 60 motion, and then again in supplemental briefing requested by the District Court.  App. 841, 855, 867.  Any contention that Nigeria had no notice of this issue, or no

34

opportunity to be heard, is belied by the fact that it extensively briefed the issue to the Court below.

Second, Rule 54(c) of the Federal Rules of Civil Procedure plainly provides that, with the exception of default judgments, final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Courts "liberally construe Rule 54(c), 'leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved.'" *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 28 (D.D.C. 1998) (citation omitted). This has particular force where, as here, the Complaint requests "such other and further relief as this Court deems just, proper and equitable." *See Williams v. Johnson*, 747 F. Supp. 2d 10, 21 (D.C. Cir. 2010) (permitting plaintiff to seek back pay where plaintiff's complaint requested "such other and further relief as the Court may consider just and proper"); *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985); *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005); *First Am. Corp.,* 17 F. Supp. 2d at 28 (allowing plaintiff to pursue disgorgement claim where not specifically requested in the complaint).[14]

---

[14]     Nigeria's reference to *G.E. Transport S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010) is misguided. App. Br. at 22-23. The District Court merely cited this case in its conversion analysis as an example of a court following the Restatement approach and using the conversion rate at the time of the award where the foreign currency has depreciated. App. 883;

Third, even if it had not fully briefed the issue twice, Nigeria cannot claim to have been surprised by Continental's request for conversion. By signing the New York Convention, Nigeria subjected itself to confirmation and enforcement of the Award under U.S. law. Continental sought enforcement before a U.S. federal court – a court that typically enters judgments in U.S. dollars. Moreover, the underlying contract between Continental and Nigeria was a dollar-denominated contract.[15]

Finally, Nigeria cannot credibly argue that conversion of the foreign currencies based on Continental's request in its summary judgment papers is somehow prejudicial. On the contrary, the analysis applied by the District Court sought to preserve the value of the Award given the depreciation of Nigerian currency relative to the dollar.[16] Nigeria plainly cannot argue that the District

---

932 F. Supp. 2d at 164. Nigeria attempts to distinguish *G.E. Transport* because it "does not indicate whether the petitioner sought conversion by its complaint". App. Br. at 22. However, even a cursory review of the docket entries of that case demonstrates that the court granted currency conversion where the petitioners did not specifically request conversion in the petition, but did request it in their motion for a default judgment. *See GE Transport S.P.A. v. Republic of Albania*, Amended Petition to Confirm Arbitration Award, 2008 WL 6982665 (Dec. 3, 2008); *GE Transportation S.P.A. v. Republic of Albania*, Memorandum of Law in Support of Motion for Default Judgment and Confirmation of Arbitral Award, 2009 WL 3413397 (April 17, 2009).

[15] Pursuant to the parties' 1999 Agreement, not only was payment to Continental to be made in U.S. dollars, but Continental's expenses were noted to be incurred, at least in part, in U.S. dollars. *See* App. 122, 164-64. Thus, Continental incurred expenses in U.S. dollars, and suffered losses in U.S. dollars, on a contract that dictated payment in U.S. dollars.

[16] There is no uniform rule governing currency conversion dates when confirming an arbitration award. The Restatement (Third) of Foreign

36

Court's decision not to devalue Nigeria's obligation – thereby giving Nigeria a windfall based on its own delay – is the sort of prejudice that warrants reversal.

## IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY TREATING CONTINENTAL'S RULE 60(A) MOTION AS A RULE 59(E) MOTION

Nigeria asserts that the court erred in treating Continental's motion pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, as having been brought instead under Rule 59(e) (Issues Presented I.3 and I.5).  App. Br.  At 23-24.  This argument is without merit.

There can be no serious question that courts can treat timely motions made under Rule 60(a) as having been made under Rule 59(e).  *See Moy v. Howard University*, 843 F.2d 1504, 1505 (D.C. Cir. 1988) ("Under the Case law of this circuit, regardless of the way a caption characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within Rule 59(e)'s perimeter"); *Gulf Power Co. v. Coalsales II, LLC*, 522 Fed. Appx. 699, 709 (11th

---

Relations Law states that a court should choose a date of conversion such that the exchange rate will "make the creditor whole and [will] avoid rewarding a debtor who has delayed in carrying out the obligation."  § 823(2) (1987).  The commentary to this section specifically recognizes that:

the date used for conversion should depend on whether the currency of obligation has appreciated or depreciated relative to the dollar.  In general, if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach…."

§ 823(2) cmt. (c).  This section was adopted by the District Court in *G.E. Transport* and *McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 13 (D.D.C. 2000) *rev'd in part on other grounds*, 271 F.3d 1101 (D.C. Cir. 2001).  The rule is to "make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation."  § 823(2).

37

Cir. 2013); *Companion Health Svcs., Inc. v. Kurtz*, 675 F.3d 75, 87 (1st Cir. 2012);

*Matthew v. UNUM Life Insur. Co. of America*, 639 F.3d 857, 863 n. 4 (8th Cir.

2011).  Indeed, "[c]ourts have generally held that, regardless of the title, any

motion for reconsideration filed within the time specified by Rule 59(e) is treated

as a motion to alter or amend judgment."  12 Moore's Federal Practice, §59.30[7]

(Matthew Bender 3d Ed.).

   Not surprisingly, Nigeria cites no authority for its contention that the

District Court could not do the same with Continental's motion.  In fact, Nigeria

itself argued below that "Relief can only be granted Plaintiff upon motion made

pursuant to Rule 59(e), seeking to amend or alter the judgment, not a Rule 60(a)

motion."  App. 806.  Now that the District Court has agreed with that position,

Nigeria contends that it was error to do so.

   Nigeria also confusingly claims that the District Court's "treatment of

the Rule 60(a) motion as a Rule 59(e) motion also does not comport with the

stringent requirements set by this court" in *Firestone v. Firestone*, 76 F.3d 1205,

1208 (D.C. Cir. 1996) and *Ciralsky*, 355 F.3d at 673.  App. Br. at 24.  Nigeria does

not explain its specific objections to the District Court's analysis.  There is no

dispute about the standard for Rule 59(e) motions as set forth in those cases.  A

motion pursuant to F.R.C.P. 59(e) "is discretionary and need not be granted unless

the district court finds that there is an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest

injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting

*Firestone*, 76 F.3d at 1208 (D.C. Cir. 1996)).

       The District Court found that currency conversion was appropriate for

several reasons:

> [B]ecause the values of the naira and the pound have
> depreciated relative to the dollar since the date of the
> arbitral award, denying Continental's conversion
> request—or granting it but using the exchange rates in
> place on the date of the Order and Judgment—would
> significantly diminish the real value of Continental's
> judgment. . . . Given Continental's request for a
> judgment in U.S. currency, the established presumption
> in favor of such a request, Nigeria's failure to object
> earlier, and the fact that refusing Continental's request
> now would reward Nigeria's dilatory tactics and
> avoidance of its obligations, the Court will grant
> Continental's request for conversion of its award into the
> dollar amount stated above, in order to prevent a manifest
> injustice.

App. 890-91; 932 F. Supp. at 163.  Nigeria points to nothing that could give rise to

any finding that this holding by the District Court – or its decision to treat the Rule

60 motion as a Rule 59 motion – was an abuse of discretion.

## V.     CONTINENTAL IS ENTITLED TO PREJUDGMENT INTEREST AT AN INTEREST RATE OF 18% AT THE TIME OF JUDGMENT

       The New York Convention does not specify the rate of post-award,

prejudgment interest, nor does any Federal statute.  *See Lucent Tech., Inc. v.*

*Tatung Co.*, 269 F. Supp. 2d 402, 407, n. 5 (S.D.N.Y. 2003).  However, because

prejudgment interest is "an element of [the plaintiff's] complete compensation",

the same considerations that determine whether or not a court will award interest at

all should bear on that court's choice of the interest rate to apply.  *See Osterneck v.*

*Ernst & Whinney*, 489 U.S. 169, 175 (1989) (internal citations omitted); *SEC v.*

*First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).  The amount

should be "fair, equitable and necessary to compensate the wronged party fully."

*Mendez v. Teachers Ins. & Annuity Ass'n and College Retirement Equities Fund*,

982 F.2d 783, 790 (2d Cir. 1992).  The presumption in favor of such interest is

necessary because without it, "the losing party in the arbitration has an incentive

[to] withhold payment — a result contrary to the purposes of the Convention."

App. 892-963; 932 F. Supp. at 164 (internal citations omitted).

   The District Court applied the United States prime rate of 3.375% to

the Award, because it found that Continental did not provide sufficient evidence of

the lending rates in Nigeria at the time of the Contract and Award, or an

explanation as to why the Nigerian lending rate was the appropriate rate to be

applied.  Continental did not do so because the *rate* itself was not objected to by

Nigeria in opposition to Continental's summary judgment motion, or in its May 30,

2012 memorandum.  App. 538, 862-65.  Nor was this lack of objection surprising,

as in the arbitration each side identified an interest rate that they believed should be

applied to the award: Continental identified 18% as the appropriate interest rate,

40

and Nigeria identified 12% on its own claims. App. 136-37 . Only by applying

interest in this range (12% - 18%) to an award did *both* parties believe they would

be made whole. This range is also consistent with data maintained by the World

Bank regarding the lending rates in Nigeria at that time, which were approximately

15.5% in 2008.[17] Moreover, that 15.5% rate had declined from a range of 20.3% to

24.8% during the time of the Contract.[18] The arbitral panel agreed with

Continental and utilized the 18% interest rate in the Award. App. 137-38 ("we

have no hesitation in concluding that the claimant's figure of 18% is quite

appropriate."). The lending rate in Nigeria has remained above 16.0% through

2012.[19] The lending rate is the most appropriate rate since, as the arbitral panel

held:

> in commercial matters, the normal reasonable expectation
> is that – as indeed happened here – a party will largely
> borrow to finance its business, and therefore

---

[17]     *See* http://data.worldbank.org/indicator/FR.INR.LEND?page=1 (last visited December 12, 2013). The Court can unquestionably take judicial notice of this data provided by the World Bank. *See, e.g., Eley v. District of Columbia,* Civ. Act. No. 11-309, 2013 WL 6092502, n.7 (D.D.C. Nov. 20, 2013) (taking judicial notice of U.S. Consumer Price Index data); *CHEM, Inc. v. C.I.R.,* 66 T.C.M. (CCH) 1241, n. 6 (T.C. 1993) (noting that "interest rate compilations published by the International Monetary Fund . . . constitute appropriate matter for judicial notice under sec. 201(b) of the Federal Rules of Evidence").

[18]     *See* http://data.worldbank.org/indicator/FR.INR.LEND?page=2 (last visited December 12, 2013).

[19]     http://data.worldbank.org/indicator/FR.INR.LEND. The lending rate in Nigeria is markedly different than the lending rate in the United States during this time frame, which decreased from a high of 10.3% in 1999 to 3.3% in 2012. *Id.*

> compensation for loss of use of money is more
> appropriately measured by reference to lending rates.

App. 137.  As the District Court noted, the applicable rate should be "what the

victim must pay –either explicitly if it borrows money or implicitly if it finances

things out of cash on hand – and [is] the rate the wrongdoer has available to it".

App. 895; 932 F. Supp. 2d at 165 (citation omitted).  The District Court's use of a

rate of 3.375% did not make Continental whole.  Accordingly, Continental

respectfully submits that the Amended Judgment should have included pre-

judgment interest at the rate of 18%.

## CONCLUSION

For the foregoing reasons, the original Judgment and the Amended

Order and Judgment should be affirmed except the Amended Order and Judgment

should be reversed only to the extent that Continental should be granted pre-

judgment interest at the rate of 18% instead of the rate utilized in the Amended

Order and Judgment.

Dated:          December 12, 2013                              Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:  ___/s/Paul F. Doyle_____
Paul F. Doyle
Joel A. Hankin
Melissa E. Byroade
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897
mbyroade@kelleydrye.com

Shaun M. Gehan
D.C. Bar No. 483720
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Phone: (202) 342-8469
Facsimile: (202) 342-8451

*Attorneys for Continental Transfert*
*Technique Limited*

43

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

[X]    this brief contains 10,384 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[  ]    this brief uses a monospaced typeface and contains [*state the number
of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface  using
Microsoft Word 2010 in 14-point Times New Roman, *or*

[  ]    this brief has been prepared in a monospaced typeface using [*state
name and version of word processing program*] with [*state number of
characters per incy and name of type style*].

/s/Paul F. Doyle_____
Attorney for Continental
Transfert Technique Limited

Dated December 12, 2013

44

# United States Court of Appeals
# for the District of Columbia Circuit

*Continental Transfer Technique Limited v. Federal Government of Nigeria, et al,*
*Nos. 11-7103(L); 13-7068; 13-7074(XAP*

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KELLEY DRYE & WARREN LLP, Attorneys for Appellee/Cross-Appellant to print this document.  I am an employee of Counsel Press.

On  December  12,  2013 ,  Counsel  for  Appellee/Cross-Appellant  has authorized  me  to  electronically  file  the  foregoing  **Brief  of  Appelee/Cross-Appellant** with the Clerk of Court using the CM/ECF System, which will serve, via  e-mail  notice  of  such  filing,  to  any  of  the  following  counsel  registered  as CM/ECF users:

> David Ludwig
> DunlapWeaver PLLC
> 211 Church Street, SE
> Leesburg, Virginia  20175
> 703-777-7319
> Attorneys for Appellants/Cross-Appellees

A courtesy copy has also been mailed to the above listed counsel.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via Express Mail.

December 12, 2013

/s/ Robyn Cocho
Robyn Cocho
Counsel Press

ADDENDUM

USCA Case #11-7103     Document #1470181          Filed: 12/12/2013     Page 60 of 67

DC ST § 15-381

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
    Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
      Chapter 3. Enforcement of Judgments and Decrees.
        Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
        **§ 15-381. Definitions.**

Formerly cited as DC ST 1981 § 15-381

For the purposes of this subchapter, the term:

  (1) "Foreign state" means any governmental unit other than the United States, or any state, the District of Columbia, or any territory or insular possession of the United States.
  (2) "Foreign-money judgment" means any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787; Mar. 13, 2004, D.C. Law 15-105, § 100, 51 DCR 881.)

Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.

DC ST § 15-382

District of Columbia Official Code 2001 Edition Currentness
 Division II. Judiciary and Judicial Procedure
  Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
   Chapter 3. Enforcement of Judgments and Decrees.
    Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
    **§ 15-382. Recognition and enforcement.**

Formerly cited as DC ST 1981 § 15-382

Except as provided in section 15-383, a foreign-money judgment meeting the requirements of section 15-387 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign-money judgment is enforceable in the same manner as the judgment of a sister jurisdiction which is entitled to full faith and credit.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787.)

Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

---

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

---

DC ST § 15-383

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
   Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
    Chapter 3. Enforcement of Judgments and Decrees.
     Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
     **§ 15-383. Grounds for nonrecognition.**


Formerly cited as DC ST 1981 § 15-383


(a) A foreign-money judgment is not conclusive if:

 (1) The judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
 (2) The foreign court did not have personal jurisdiction over the defendant; or
 (3) The foreign court did not have jurisdiction over the subject matter.

(b) A foreign-money judgment need not be recognized if:

 (1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable the defendant to defend;
 (2) The judgment was obtained by fraud;
 (3) The cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia;
 (4) The judgment conflicts with another final and conclusive judgment;
 (5) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or
 (6) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787.)


Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

DC ST § 15-384

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
    Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
      Chapter 3. Enforcement of Judgments and Decrees.
        Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
        **§ 15-384. Personal jurisdiction.**

Formerly cited as DC ST 1981 § 15-384

(a) A foreign-money judgment shall not be refused recognition for lack of personal jurisdiction if:

(1) The defendant was served personally in the foreign state;

(2) The defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over the defendant;

(3) The defendant, prior to the commencement of the proceedings, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;

(4) The defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate, had its principal place of business, was incorporated, or had otherwise acquired corporate status in the foreign state;

(5) The defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state; or

(6) The defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of such operation.

(b) The courts of the District of Columbia may recognize other bases of jurisdiction.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787.)

Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

WestlawNext® © 2013 Thomson Reuters. No claim to original U.S. Government Works.                    1

DC ST § 15-385

District of Columbia Official Code 2001 Edition Currentness
 Division II. Judiciary and Judicial Procedure
  Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
   Chapter 3. Enforcement of Judgments and Decrees.
    Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
   **§ 15-385. Stay in cases of appeal.**


Formerly cited as DC ST 1981 § 15-385


If the defendant satisfies the court that either an appeal is pending or the defendant is entitled and intends to appeal from the foreign-money judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787.)




Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

DC ST § 15-386

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
   Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
    Chapter 3. Enforcement of Judgments and Decrees.
     Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
      **§ 15-386. Savings clause.**

Formerly cited as DC ST 1981 § 15-386

This subchapter does not prevent the recognition of a foreign-money judgment in situations not covered by this subchapter.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787; Mar. 13, 2004, D.C. Law 15-105, § 100, 51 DCR 881.)

"

""""Current through May 10, 2011

""""Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

---

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

DC ST § 15-387

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
    Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
      Chapter 3. Enforcement of Judgments and Decrees.
        Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
        **§ 15-387. Applicability.**

Formerly cited as DC ST 1981 § 15-387

This subchapter applies to any foreign-money judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787; Mar. 13, 2004, D.C. Law 15-105, § 100, 51 DCR 881.)

"

Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

DC ST § 15-388

District of Columbia Official Code 2001 Edition Currentness
  Division II. Judiciary and Judicial Procedure
    Title 15. Judgments and Executions; Fees and Costs. (Refs & Annos)
      Chapter 3. Enforcement of Judgments and Decrees.
        Subchapter III. Uniform Foreign-Money Judgments. (Refs & Annos)
        **§ 15-388. Uniformity of application and construction.**

Formerly cited as DC ST 1981 § 15-388

This subchapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this subchapter among states enacting it.

CREDIT(S)

(Feb. 10, 1996, D.C. Law 11-84, § 2, 42 DCR 6787; Mar. 13, 2004, D.C. Law 15-105, § 100, 51 DCR 881.)

Current through May 10, 2011

Copyright (C) 2011 By the District of Columbia. All Rights Reserved.

''

''