# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

—

**No. 11-7103**

**September Term, 2014**

FILED ON: JANUARY 16, 2015

CONTINENTAL TRANSFER TECHNIQUE LIMITED,
APPELLEE

v.

FEDERAL GOVERNMENT OF NIGERIA, ET AL.,
APPELLANTS

Consolidated with 13-7068, 13-7074

—

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-cv-02026)

—

Before: GRIFFITH, KAVANAUGH and MILLETT, *Circuit Judges*

—

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of the parties. The Court has afforded the issues presented full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the district court's order and judgment dated March 26, 2013, be affirmed, and that the appeal from the district court's order and judgment dated August 3, 2011, be dismissed.

In May 1999, the plaintiff, Continental Transfer Technique Limited, a Nigerian corporation, entered into a contract with what is now the Ministry of the Interior of Nigeria relating to the creation of a computerized residence permit and alien card system. Disputes subsequently arose between the parties relating to the contract's performance. Continental then initiated arbitration pursuant to a provision in the 1999 contract against the Federal Government of Nigeria and its Attorney General and Minister of the Interior (collectively, "Nigeria"). The arbitration was conducted in London and resulted in the entry of an award on August 14, 2008, in favor of Continental in the amount of

1

₦29,660,166,207.48 in damages (denominated in Nigerian *naira*), $247,500 in legal fees and expenses, and £253,467.20 in costs specifically associated with the arbitration.

On November 25, 2008, Continental filed suit against Nigeria in the United States District Court for the District of Columbia seeking to confirm the arbitral award under the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*, which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly referred to as the "New York Convention"), *opened for signature* June 10, 1958, 21 U.S.T. 2517. After obtaining a judgment from a court in the United Kingdom in June 2009 confirming the same arbitration award, Continental amended its complaint to seek enforcement of that U.K. judgment, pursuant to the District of Columbia Uniform Foreign Money Judgments Recognition Act ("D.C. Recognition Act"), D.C. Code §§ 15-381 *et seq.*[1]

The district court (i) confirmed the arbitral award under the New York Convention, (ii) recognized the foreign judgment issued by the U.K. court as enforceable under the D.C. Recognition Act, (iii) converted the arbitral award into dollars, and (iv) awarded both pre- and post-judgment interest to Continental, for a total judgment in favor of Continental in the amount of $276,111,640.96.[2]

Nigeria's main argument on appeal challenges the portion of the district court's judgment recognizing the U.K. judgment under the D.C. Recognition Act. Specifically, Nigeria first contends that the U.K. court's order was not a "judgment" within the meaning of the D.C. Recognition Act. Nigeria argues, secondly, that the U.K. judgment was fraudulently obtained because Continental failed to inform the U.K. court about a restraining order issued by a Nigerian court. Nigeria, however, does not challenge the district court's confirmation of the award under the New York Convention.

This court has no appellate jurisdiction to hear Nigeria's challenges to the district court's ruling recognizing the U.K. judgment under the D.C. Recognition Act. Nigeria has not presented

---

[1] This Act was amended in 2012 and is now codified at D.C. Code §§ 15-361 *et seq.* Those amendments have no impact on the disposition of this case.

[2] In an earlier decision rejecting a motion to dismiss filed by Nigeria, the district court concluded that jurisdiction was proper under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* Specifically, the court relied on 28 U.S.C. § 1605(a)(6), which provides that a foreign state shall be subject to the jurisdiction of the courts of the United States or the States in a case "in which the action is brought * * * to confirm an award made pursuant to * * * an agreement to arbitrate, if * * * the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." We agree that this provision grants jurisdiction over Continental's claim seeking to confirm its arbitral award under the Federal Arbitration Act. Because we separately hold that we lack jurisdiction over Nigeria's appeal from that portion of the judgment granting recognition of a foreign judgment under D.C. law, we need not decide whether Section 1605(a)(6) or some other provision of law also provides jurisdiction over Continental's D.C. Recognition Act claim. In addition, Nigeria has waived its sovereign immunity through its active participation in this case following the denial of the motion to dismiss, its failure to raise any sovereign-immunity objection in its briefs on appeal, and its express disclaimer at oral argument of any sovereign-immunity objection to the district court's exercise of subject-matter jurisdiction, Oral Arg. Rec'g at 7:00–9:22. *See Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000) (noting Greek government's counsel's explanation at oral argument that government's position on contractual forum-selection clause operated as a waiver).

any challenge to the independent and fully sufficient alternative ground for the district court's judgment:  the confirmation of the same arbitral award under the New York Convention.  *See* J.A. 779-780, 877.  That omission deprives this court of jurisdiction.  That is because, no matter what our ruling on Nigeria's objections to the Recognition Act holding, the judgment below must be affirmed in any event on the basis of the district court's unchallenged confirmation of the arbitral award under the Federal Arbitration Act and its codification of the New York Convention.  The relief provided to Continental on that cause of action is, in all relevant respects, identical to that obtained under the Recognition Act.  *Cf. Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79, 83 (2d Cir. 1994) (concluding, in comparing a cause of action brought under a New York state law analogous to the D.C. Recognition Act to one brought under the Federal Arbitration Act and the New York Convention, that "[b]ecause the relief based on the successful cause of action and that based on the dismissed cause of action are identical, reinstating the earlier judgment works no harm on appellants").  This court's judgment, in other words, cannot possibly afford Nigeria any relief, and we have no authority to decide legal questions if our judgment can provide no redress.  *See Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

Nigeria's remaining challenges, which focus on the district court's post-judgment rulings, do not share this jurisdictional defect because, if successful, they would alter the district court's judgment.  The challenges, however, are without merit.

First, Nigeria argues that the district court abused its discretion in treating the plaintiff's post-judgment motion—which was filed as a motion to correct "a clerical mistake or a mistake arising from oversight or omission" under Federal Rule of Civil Procedure 60(a)—as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  Yet, as Nigeria recognizes, this court has previously approved such recharacterization when, as here, the Rule 60 motion was filed within the time limit for filing a Rule 59(e) motion.  The settled law in this circuit is that, "regardless of the way a caption characterizes a motion, a postjudgment filing challenging the correctness of the judgment falls within Rule 59(e)'s perimeter."  *Moy v. Howard University*, 843 F.2d 1504, 1505 (D.C. Cir. 1988).

Nigeria contends that Continental's "insistence" that its motion be treated as a Rule 60(a) motion precluded the district court from converting it into a Rule 59(e) motion.  Nigeria Reply Br. 11.  Even assuming that actions by a movant, in some circumstances, could preclude recharacterization, we note that the record does not document any such insistence on Continental's part.  Instead, Continental simply voiced its view that its motion could properly be brought under Rule 60(a), while simultaneously noting that it had been filed within the time period for filing a Rule 59(e) motion.  The district court's conversion of the motion thus was well within its discretion.

Second, Nigeria argues that the district court abused its discretion in converting Continental's arbitral award from Nigerian *naira* and British pounds into American dollars because such relief was not explicitly requested in the complaint.  Nigeria, however, does not dispute the district court's conclusion, consistent with settled law, that "a judgment in a foreign currency should be issued only

3

when requested by the judgment creditor," *Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013) (quoting RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 823 cmt. b). Instead, Nigeria asserts that Continental's request that the arbitral award be confirmed constitutes a specific request for a judgment in a foreign currency because that is how the award issued from the arbitral panel. Silence, however, is not a request. Moreover, Federal Rule of Civil Procedure 54(c) specifically provides that a final judgment ordinarily "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." That obligation has been liberally construed, particularly when, as here, the complaint contains a general request for "such other and further relief as this Court deems just, proper and equitable," J.A. 100. *See People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 420–421 (D.C. Cir. 2005).

Third, if Nigeria intended to challenge the district court's application of the standards for granting a Rule 59(e) motion, its fleeting and unelaborated references to this court's decisions in *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004), and *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996), forfeit that argument. As this court has recognized on numerous occasions, "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 n.1 (D.C. Cir. 2010) (quoting *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008)).

Continental cross-appeals one specific aspect of the district court's judgment.[3] It asserts that the court below abused its discretion in awarding Continental prejudgment interest at "the prime rate, *i.e.*, the rate that banks charge for short-term unsecured loans to credit-worthy customers." *Continental Transfert*, 932 F. Supp. 2d at 164 (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)). Continental argues that the proper rate was instead the rate of eighteen percent that it had requested below and that the arbitral panel had used in calculating pre-award interest.

That challenge fails. This court has repeatedly concluded that the use of the prime rate in the award of prejudgment interest reflects an appropriate exercise of the district court's discretion. *See Oldham*, 127 F.3d at 54; *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450 (D.C. Cir. 1996). The district court may have had the *authority* to adopt a rate that better approximates what a specific defendant might pay for an unsecured loan. *See, e.g.*, *In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France*, 954 F.2d 1279, 1332 (7th Cir. 1992). We cannot conclude, however, that the district court's declination to engage in the "refined rate-setting" Continental proposes was an abuse of discretion. *See Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114

---

[3] Nigeria argues that, with respect to its cross-appeal, Continental failed to comply with a provision of the D.C. Circuit's HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES (2013), incorporated in the scheduling orders in this appeal, that requires the "appellant" to submit a "preliminary statement of the issues for appeal." *Id.* at 22. Even if there were a technical failure on Continental's part to comply with that requirement, it would not warrant the drastic remedy of dismissal of its cross-appeal given the absence of any discernible prejudice to Nigeria. *Cf. United States v. Pogue*, 19 F.3d 663, 666 (D.C. Cir. 1994) ("The docketing statement is used principally to aid the court in its initial screening of a case; it does not irrevocably define the limits of the scope of an appeal.").

(7th Cir. 1998); *see also Forman*, 84 F.3d at 451 (prime rate appropriate even though it "may miss the mark for any particular party") (quoting *In the Matter of Oil Spill*, 954 F.2d at 1332).[4]

       Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

                                      **FOR THE COURT:**
                                      Mark J. Langer, Clerk

                  BY:    /s/
                           Jennifer M. Clark
                           Deputy Clerk

---

[4] Nigeria makes no argument that the award of prejudgment interest should have been raised by Continental before and decided by the arbitral panel, rather than first presented to a court enforcing the award under the New York Convention. We therefore need not decide in this case whether either the parties' agreement or any provision of law imposes such a requirement.